

Slip Copy
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
(Cite as: Slip Copy)

Page 1

Briefs and Other Related Documents
Irwin Seating Company v. International Business Machines Corp.W.D.Mich.,2006.Only the Westlaw citation is currently available.
United States District Court,W.D. Michigan,Southern Division.
IRWIN SEATING COMPANY, Plaintiff,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION and J.D. Edwards World Solutions Company, Defendants.
No. 1:04-CV-568.

Nov. 29, 2006.

Aaron M. Phelps, Varnum Riddering Schmidt & Howlett LLP, Grand Rapids, MI, John W. Boyd, Joseph Goldberg, Freedman Boyd Daniels Hollander & Goldberg PA, Albuquerque, NM, for Plaintiff.
Shannon J. Cassell, Gary Michael Miller, Mary Laura Swietnicki, Paul A. Sheldon, Todd C. Jacobs, Grippo & Elden LLC, Stephen J. Rosenfeld, Kristin Lee Lingren, Suzanne Miriam Scheuing, Natalie A. Harris, Mandell Menkes LLC, Chicago, IL, Charles E. Chamberlain, Jr., Willey Chamberlain & Yates LLP, Grand Rapids, MI, Earle I. Erman, Erman Teicher Miller Zucker & Freedman PC, Southfield, MI, for Defendants.

**ORDER STRIKING EXPERT WITNESSES**
HUGH W. BRENNEMAN, JR., Magistrate Judge.
*1 Pending before the court is a motion by defendant International Business Machines Corporation ("IBM") to strike plaintiff's experts due to Irwin Seating Company's ("Irwin") violation of mediation confidentiality (docket no. 195). Defendant J.D. Edwards World Solutions Company has joined in IBM's motion.

Defendant IBM bases its motion on the fact that Irwin improperly supplied its testifying experts with confidential mediation statements and exhibits obtained during a mediation between the parties, and that the experts reviewed these documents in rendering their opinions.

This matter was sent to voluntary facilitative mediation by the court on October 21, 2005. An order entered by the court several days later outlining the procedures for the mediation, provided that "all information disclosed during the mediation session, including the conduct and demeanor of the parties and their counsel during the proceedings, must remain confidential, and must not be disclosed to any other party nor to this court, without consent of the party disclosing the information." Order of November 2, 2005.

At the direction of the mediator, the parties each furnished to her mediation statements and accompanying documents, highlighting those portions of the exhibits the defendants believed to be the most important. IBM asserts, and Irwin does not deny, that Irwin subsequently provided its experts with the defendants' confidential mediation statements accompanying the documents, which explain the importance of certain documents and why they were selected. The documents were also highlighted at the request of the mediator to indicate those portions of the documents that the defendants believed to be the most important.

On April 18, 2006, Irwin produced two expert reports, one by Jeff Hagins assessing the liability of the defendants, and the other by Marianne DeMario pertaining to damages. Each expert report explicitly states that the expert reviewed the mediation material produced by IBM and J.D. Edwards. See Expert Report of Jeff Hagins at p. 40 ("I have reviewed all of the mediation exhibits from IBM, J.D. Edwards, and Irwin Seating."); Expert Report of Marianne L. DeMario at Exhibit B to the report ("Documents Reviewed by Marianne DeMario ... IBM mediation letter, 1/11/06 ... Exhibit C to IBM mediation letter; Exhibit F to JDE mediation brief ... Exhibit G to IBM mediation letter, J.D. Edwards World Solutions Company's Confidential Mediation Brief, 1/12/06....Exhibit G to JDE mediation brief ... Exhibit A to JDE mediation brief). DeMario also cites to the mediation materials throughout the text of her opinion. *Id.* at 3, 4, 5, 6, 7, and 8. Irwin acknowledges that the mediation briefs and attached exhibits "were provided to Mr. Hagins and Ms. DeMario as background and were used by them as such." Plaintiff's Brief in Opposition to IBM's Motion, filed May 22, 2006, at 3.

*Confidentiality Rule*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
(Cite as: Slip Copy)

Page 2

It is beyond question that the mediation proceedings in this case were intended to be confidential, and for settlement purposes only. The explicit order of the court was sufficient notice of this fact to the parties without more.

*2 But there was more. The November 15, 2005 letter from the mediator to the parties reiterated that "[t]he mediation process is confidential." In reliance upon this, IBM states that each page of its mediation statement was clearly marked in bold print: **"CONFIDENTIAL COMMUNICATION FOR SETTLEMENT PURPOSES ONLY."**

Moreover, the local court rules specifically provide for the confidentiality of ADR procedures such as voluntary facilitative mediation. W.D. Mich. LCiv R 16.2(e) provides:
*Confidentiality*-information disclosed during the ADR process shall not be revealed to any one else without consent of the party who disclosed the information. All ADR proceedings are considered to be compromised negotiations within the meaning of Federal Rules of Evidence 408.[FN1]

> FN1. Rule 408 provides in pertinent part: "... Evidence of conduct or statements made in compromised negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromised negotiations ..."

The Sixth Circuit has long recognized that
"[t]here exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel *uninhibited* in their communications." (emphasis added)

*Goodyear Tire & Rubber v. Chiles Power Supply, 332 F.3d 976, 980 (6th Cir.2003).* In deciding to recognize the existence of a settlement privilege protecting settlement communications, the court noted that "confidential settlement communications are a tradition in this country. See, e.g., *Palmieri v. New York,* 779 F.2d 861, 865 (2nd Cir.1985) (citing *In Re: Franklin Nat'l Bank,* 92 F.R.D. 468, 472 (E.D.N.Y.1981)) (stating that "[s]ecrecy of settlement terms ... is a well-established American litigation practice"). This Court has always recognized the need for, and the constitutionality of, secrecy in settlement proceedings (citations omitted)." *Id.* at 980.

In summary, the court held that "any communications made in furtherance of settlement are privileged." *Id.* 983.

### *Violation of the Conflict Rule*

There is also no question but that Irwin's lawyers provided copies of IBM's and JDE's mediation briefs and exhibits to the experts. See Affidavit of Jeff L. Hagins dated May 19, 2006 at ¶ 3; Affidavit of Marianne L. DeMario dated May 19, 2006 at ¶ 3. While both experts deny either of the mediation briefs from the defendants influenced them in developing their opinion, they both admit they read these mediation statements as they began their analysis. Mr. Hagins stated, "I did read both IBM's and JDE's mediation briefs once, as part of my initial reading of foundational materials, ... in order to gain some sense of what the case was about. I read these mediation briefs on my computer in the electronic format in which they were provided to me." Hagins Brief at ¶ 5.

*3 Ms. DeMario states, "I read the mediation brief for context, when I first started working on my damages analysis...." Ms. DeMario explains that she "cited certain documents as exhibits to the mediation briefs for the sake of simplicity, since it was easier to cite them that way than to locate the same documents among the thousands of pages of materials that had been provided to me by Irwin's lawyers". DeMario's affidavit at 6.[FN2]

> FN2. This protestation proves too much, since by utilizing the exhibits attached to defendants' briefs throughout her analysis, rather than the bates-stamped versions, she was, necessarily, repeatedly pulled back to defendants' briefs and their marked up copies of the documents.

Both experts claim they do not recall what the defendants' mediation positions were, but in this context the affidavits are not particularly persuasive

Slip Copy
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
(Cite as: Slip Copy)

Page 3

since it is readily apparent both were drawn up by the same hand. For example, Mr. Hagins testifies in paragraph 7 of his affidavit:
"I do not even recall what IBM's and JDE's mediation positions were",

while Ms. DeMario states in paragraph 7 of her affidavit:"I don't even recall what were IBM's and JDE's mediation positions."

Plaintiff does not deny the documents were confidential documents nor that its lawyers provided them to the plaintiff's experts, nor that the plaintiff's experts reviewed these documents in preparing their reports. Rather, plaintiff's defense is an attempt to minimize the impact these disclosures had and to argue that the sanction requested by defendants-that these experts be stricken as expert witnesses-is too severe.

The court finds that plaintiff's conduct was in direct derogation of the order of this court, the directions of the mediator, and the common understanding of the purpose for which the mediation documents were to be used. Clearly the mediation briefs and the marked-up documents attached to them constituted settlement communications. While defendants correctly acknowledge that the documents themselves were otherwise producible to the plaintiff's experts, they persuasively argue that the mediation reports themselves, and the highlighting of portions of documents especially selected by the defendants as referred to in their mediation reports, were communications subject to the settlement privilege, not grist for the experts' mill.

*Impact of Violation of Confidentiality*

The court need not find a bad intent on the part of Irwin's lawyers in furnishing all of these materials to their experts. What the court does find, whatever the intent, was that these documents were furnished on purpose for the experts to review, and they were in fact reviewed. This is the reality of the situation confronting the court, and it is a dilemma created solely by the actions of plaintiff's own lawyers.

Nor does the problem end here since these reports are now a part of the record used by the plaintiff's experts, and the experts are subject to cross-examination on them. Any cross-examination, of course, runs a risk of touching on the privileged communications. Moreover, and perhaps more significantly, there is no adequate way to assess the impact the mediation briefs had on the experts, and how the experts may have shaped their evaluations consciously or unconsciously in response to the claims made and positions taken by defendants in their mediation briefs. Even in denying any recall of what defendants' positions were in their reports, both experts concede these briefs were among the first documents they read, "in order to gain some sense of what the case was about." FN3 The bell has been rung. There are simply some things that cannot be forgotten once they are learned.

> FN3. By way of analogy, apropos to this time of the year, if a football coach learns that his opponent for next week's game is relying on his team's ability to pass to a particular deep receiver, the coach learning this will doubtlessly concentrate his attention on strategies to cover that receiver.

*4 Moreover, plaintiff's counsel's behavior in sharing these materials with unauthorized persons strikes at the heart of the ADR process.

Striking an expert witness is a harsh remedy, but not an unfair one, where a party has placed its experts at risk by infusing them with knowledge to which they were not entitled. The risk should not be upon the innocent defendants in this instance. The extent of the damage done in terms of how much these mediation briefs and the highlighted documents affected the experts, again consciously or unconsciously, in shaping their approaches and their opinions, is not truly knowable nor easily remediable. Where this situation arises from a clear violation of the court's order and the settlement privilege generally, it is the plaintiff that must bear the brunt of the resolution.

Defendant's motion is GRANTED, and plaintiff's experts Hagins and DeMario are stricken as experts and shall not testify in this action.FN4 Movant IBM is also awarded costs and attorney's fees in the amount of $1,000.00, payable within 30 days. *See,* Rules 26(c)and 37(a)(4). If either party objects within 10 days of this order to the amount assessed, IBM shall, within 7 days thereafter, provide an affidavit together with any supporting documentation justifying the amount it believes is appropriate (more or less than $1,000.00), and plaintiff shall have 7 days thereafter to file an appropriate response. The court may schedule a further hearing on the question of costs if it deems it necessary.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
(Cite as: Slip Copy)

Page 4

FN4. The court is aware this resolution may also have a salutary effect in preserving confidences of future mediation participants, and the candor necessary to successful facilitative mediations. A contrary result would certainly have a dramatically contrary impact.

IT IS SO ORDERED.

W.D.Mich.,2006.
Irwin Seating Company v. International Business Machines Corp.
Slip Copy, 2006 WL 3446584 (W.D.Mich.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1862143 (Trial Motion, Memorandum and Affidavit) Plaintiff Irwin Seating Company's Memorandum in Opposition to IBM's Motion to Strike Irwin's Experts and for other Appropriate Relief (May 22, 2006) Original Image of this Document (PDF)
• 2006 WL 1862141 (Trial Motion, Memorandum and Affidavit) Defendant IBM'S Motion to Strike Irwin's Experts and for other Appropriate Relief for Irwin's Violation of Mediation Confidentiality (May 5, 2006) Original Image of this Document (PDF)
• 2006 WL 1862142 (Trial Motion, Memorandum and Affidavit) Defendant IBM's Memorandum In Support of Its Motion to Strike Irwin's Experts And For Other Appropriate Relief For Irwin's Violation Of Mediation Confidentiality (May 5, 2006) Original Image of this Document with Appendix (PDF)
• 2006 WL 1444397 (Trial Motion, Memorandum and Affidavit) Opposition of Plaintiff Irwin Seating Company to J.D. Edwards World Solutions Company's Motion to Modify Case Management Order and Expedite Briefing on Dispositive Motions (Apr. 14, 2006) Original Image of this Document (PDF)
• 2006 WL 1444396 (Trial Motion, Memorandum and Affidavit) Plaintiff Irwin Seating Company's Opposition to Defendant Ibm's Motion to Compel Production (Apr. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 1205874 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Plaintiff Irwin Seating Company's Motion to Compel Discovery Responses from Defendants Ibm and J.D. Edwards (Mar. 23, 2006) Original Image of this Document (PDF)
• 2006 WL 1205873 (Trial Motion, Memorandum and Affidavit) J.D. Edwards World Solutions Company's Response and Brief in Opposition to Irwin Seating Company's Motion to Compel Discovery Responses (Mar. 14, 2006) Original Image of this Document (PDF)
• 2006 WL 789299 (Trial Pleading) Amended Answer and Counterclaim (Feb. 8, 2006) Original Image of this Document (PDF)
• 2006 WL 417770 (Trial Motion, Memorandum and Affidavit) Defendant IBM's Memorandum in Support of Its Motion to Compel Production of Documents and Responses to Interrogatories by Irwin Seating (Jan. 13, 2006) Original Image of this Document (PDF)
• 2004 WL 2753406 (Trial Motion, Memorandum and Affidavit) J.D. Edwards World Solutions Company's Memorandum in Support of Its Motion to Dismiss (Oct. 29, 2004) Original Image of this Document (PDF)
• 2004 WL 2753404 (Trial Motion, Memorandum and Affidavit) IBM's Memorandum of Law Supporting Its Motion to Dismiss and Strike (Oct. 25, 2004) Original Image of this Document (PDF)
• 2004 WL 2753401 (Trial Pleading) Complaint and Jury Demand (Aug. 24, 2004) Original Image of this Document (PDF)
• 1:04cv00568 (Docket) (Aug. 24, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT B**

Slip Copy
Slip Copy, 2006 WL 1042072 (E.D.Mich.)
(Cite as: 2006 WL 1042072 (E.D.Mich.))

Page 1

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan,
Southern Division.
SUNROOF de MEXICO, S.A. de C.V., Plaintiff,
v.
WEBASTO ROOF SYSTEMS, INC., Defendant.
No. 05-40031.

April 19, 2006.
Jeffrey D. Wilson, Michael M. Jacob, Raymond & Prokop, Southfield, MI, for Plaintiff.

Marc D. Kaszubski, O'Reilly, Rancilio, Robert C. Davis, O'Reilly, Rancilio, Sterling Heights, MI, for Defendant.

*OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO STRIKE DOCUMENTS (Dkt.# 50)*

STEVEN D. PEPE, Magistrate Judge.

*1 This is a contract claim by Sunroof de Mexico, S.A. de C.V., a Mexican distributor of Webasto Roof Systems' sunroofs in Mexico, for an alleged 2001 breach of its January 30, 1990 exclusive distributorship agreement. On March 8, 2006, Defendant filed a motion to strike multiple damages documents produced by Plaintiff after deadlines set by this Court in October 20 and December 14, 2005 orders and enforce the December 14th order's warning by precluding Plaintiff's experts from testifying at trial and use of certain documents (Dkt.# 50).

This motion was referred for hearing and determination pursuant to 28 U.S.C. 636(b)(1)(A). The parties submitted briefs and participated in an in-person hearing on April 13, 2006.

Plaintiff contends that this motion, if granted, will be case dispositive because it will undermine its ability to prove its damages at trial. Yet, technically Defendant's motion is not a case dispositive motion under 28 U.S.C. § 636(b)(1)(B). Defendant's current motion requests that for Plaintiff's violation of earlier orders of this Court regarding damages discovery and experts that the Court impose the sanction of excluding certain evidence: (1.) damages documents produced after the date set for production and the extended date allowed for damage document production, as well as (2.) the related testimony of Plaintiff's damage experts that is based on those tardy documents. This is a sanction specifically permitted under Fed.R. Civ. P. 37(b)(2) for failure of a party to comply with a court order to provide or permit discovery. In this case, as noted in detail below, Plaintiff was ordered to produce certain discovery documents on damages to Defendant by a certain date, and produce an expert report and experts for deposition who were specifically limited to using those documents that Plaintiff had produced to Defendant by the deadline. As will be shown, Plaintiff has violated these orders. Fed.R. Civ. P. 37(b)(2)(B) specifies as a permissible sanction "prohibiting [the disobedient] party from introducing designated matters in evidence." Defendant seeks to prohibit Plaintiff from having its experts testify and from otherwise using any damages evidence beyond that produced by the deadlines specified, and thereafter extended, by this Court. 28 U.S.C. 636(b)(1)(A) lists pretrial duties that a federal district judge can refer to a magistrate judge for hearing and determination consistent with Article III of the U.S. Constitution.

28 U.S.C. 636(b)(1)(A) specifically excludes reference of motions "to suppress evidence in a criminal case", which suggests that Congress considered reference of motions to exclude evidence and allowed them for hearing and determination in civil cases. [FN1] Accordingly, this motion will be considered as referred for hearing and determination. If the Article III judge in reviewing any objections to this opinion and order determines that it is appropriate to review the matter under a "de novo" standard applied to matters handled under 28 U.S.C. 636(b)(1)(B) instead of a "clearly erroneous or contrary to law "standard of 28 U.S.C. 636(b)(1)(A), he may modify the reference and make such findings under such standards as he deems appropriate.

FN1. *Ann L. v. X Corp.*, 133 F.R.D. 433, 435 (W.D.N.Y.,1990) ("Jurisdiction of a magistrate over suppression motions in civil

Slip Copy
Slip Copy, 2006 WL 1042072 (E.D.Mich.)
(Cite as: 2006 WL 1042072 (E.D.Mich.))

Page 2

cases under 28 U.S.C. § 636(b)(1)(A) is confirmed by that subparagraph's enumeration of criminal case suppression motions as excluded from subparagraph (b)(1)(A) jurisdiction. The clear inference is that suppression motions in civil cases under Fed .R.Civ.P. 26(c) may be determined by a magistrate, subject to a " 'clearly erroneous or contrary to law' standard of review.").

*2 After a thorough consideration of the matter and for the reasons stated below, Defendant's motion is GRANTED.

I. CASE PROCEDURAL BACKGROUND

Plaintiff filed its complaint on January 31, 2005, alleging breach of contract and specifying damages of $14,236, 800.00. A March 3, 2005, scheduling order required discovery to be completed by July 30, 2005, and set a trial date of February 6, 2006 (Dkt.# 7). A July 26, 2005, stipulated order extended discovery until September 30, 2005 (Dkt.# 11). Plaintiff filed a motion for partial summary judgment on August 3, 2005, (Dkt.# 12). An August 29, 2005, stipulated order extended discovery again until November 30, 2005 (Dkt.# 15). Defendant filed its motion to compel discovery on September 19, 2005, which will be described further below (Dkt.# 16). This motion was granted in part on October 20, 2005, in an order which extended the scheduling order for the third time with discovery to close on January 19, 2006, Plaintiff's expert report due December 1 and Defendants expert report was due January 16 (Dkt.# 21). This order specified that:

1. On or before November 2, 2005, Plaintiff shall produce to Defendant all remaining documents in support of its request for damages contained in the Complaint.
2. No documents, other than those produced to Defendant by November 2, 2005, may be used by Plaintiff or Plaintiff's experts to support its claim for damages, except for those produced by Defendant and/or those documents which Plaintiff receives in response to the subpoena it served on Hollandia Sunroofs of Mexico.
* * *
5. Plaintiff's expert report on damages shall be submitted on or before December 1, 2005. Plaintiff's expert shall be available to be deposed on or before December 21, 2005.

After Plaintiff missed November 2nd deadline, Defendant filed a motion on November 10, 2005, to strike documents produced by Plaintiff after November 2nd (Dkt.# 23). Plaintiff also missed the December 1, 2005, expert report deadline. On December 2, 2005, Plaintiff filed a motion requesting a fourth extension of discovery and making its expert available within 30 days, noting "This is Plaintiff's first Motion to extend the Court's Scheduling Order." (Dkt.# 31). The motion specifically identifies the statement of issues presented as:

**STATEMENT OF THE ISSUE PRESENTED**
Whether Plaintiff should be granted a thirty-day extension to file its final Expert Report and make its expert witness available for deposition?
Plaintiff's answer: Yes.

The motion mentions that the Plaintiff's expert "Harold Dubrowsky of Grant Thornton advised Plaintiff's counsel by correspondence that additional time was required to finalize his expert report." In its argument Plaintiff asserts:

Plaintiff and its expert witness have worked diligently to formulate an expert report supporting Plaintiff's claim for damages. Given the difficulties associated with Plaintiff's location and the barriers between Grant Thornton and Plaintiff (both geographic and linguistic), the development of Plaintiff's expert report has been delayed. Plaintiff's expert believes that a final report can be prepared with an additional 30 days.

*3 The series of delays in getting Plaintiff's damages documents from the initial disclosures through to the missed November 2 deadline were apparent to all by this time, but those documents, it was believed, were produced to defense counsel in mid-November. Plaintiff's December 2 motion made no request for any modification of paragraph 2 of the October 20, 2005, Order which limited the materials upon which its damages expert could rely to documents produced to Defendant by November 2005. Indeed, it appeared the Plaintiff's December 2 request was for the Plaintiff's expert to have more time to analyze the damages documents and complete his expert report than the 2 weeks allowed from November 14 (when the damages documents were finally assembled and available) to December 1 when the expert report was due.

In a December 14, 2005, order Defendant's motion to strike and bar the use of the Plaintiff's damage documents was denied (though Plaintiff was ordered to pay Defendant's legal costs (determined to be $4,182 (Dkt.# 53)) associated with bringing the motion). Defendant had sought to exclude Plaintiff's experts from using the damages documents tardily produced by November 14. Yet, after finding substantial compliance with the October 20 order and no prejudice to Defendant, it was determined:

Slip Copy
Slip Copy, 2006 WL 1042072 (E.D.Mich.)
(Cite as: 2006 WL 1042072 (E.D.Mich.))

Page 3

Therefore, the documents may be used to support Plaintiff's damage claim. *No additional documents of Plaintiff may be used by Plaintiff's counsel or expert to support its damage claim.*
December 14, 2005, Order; Dkt. # 53, p. 2 (emphasis supplied).

Reiteration of this limit on Plaintiff's coming up with more damages documents was specifically requested by defense counsel at the December 13 hearing. In order to impress on Plaintiff's counsel that continued disregard of its discovery obligations would not be forgiven the next time, at the December 13 hearing it was stated "I will put as Draconian language in this next order as I can and this time I will mean it."

Plaintiff's December 2 motion for "a thirty-day extension to file its final Expert Report and make its expert witness available for deposition" was granted (Dkt. # 3 8). The December 14, 2005, order specified:

Plaintiff shall be permitted to submit its expert report to the offices of defense counsel on or before 4:45 PM on January 3, 2006, on the following conditions: (1) within fourteen (14) days of a stipulation or court determination as to amount, Plaintiff shall pay the costs including attorney fees Defendant incurred in filing and/or defending these two motions; (2) Plaintiff's experts, both Harold Dubrowsky and Hector Bautista Esquivel, shall be made available at Plaintiff's expense (including both travel and translator expenses) for deposition at defense counsel's offices in Michigan on or before January 31, 2006; (3) Defendant's expert report shall be submitted on or before March 31, 2006, with a deposition to occur on or before April 14, 2006. *Failure of either side to comply with the terms of this order shall result in the waiver of its right to have an expert testify at trial on damages and any consequences resulting from this exclusion.*

*4 *Id.* at p. 2-3 (emphasis supplied).

Because the Court was not requested to modify its October 20 order limiting Plaintiff's experts to the damages documents produced to Defendant in November, this December 14 order fully anticipated that the 30 days extension to produce the expert report would comply with that November condition as modified and reiterated by the December 14 order.

Defendant filed its motion for summary judgment on December 13, 2005 (Dkt. # 36). [FN2]

> FN2. Both parties' dispositive motions were denied on March 31, 2006 (Dkt # 56).

II. THE CURRENT MOTION

Defendant's current motion revolves around a repeated pattern of Plaintiff's failure to meet this Court's deadlines and specific orders to provide the documents and expert accounting support for the $14,236,800.00 damages claim it specifically pled over a year ago in its January 31, 2005, complaint.

Defendant has attempted to obtain adequate evidence of damages from Plaintiff. Such information was not forthcoming in the March 2005 initial disclosures, nor in response to the document requests accompanying Defendant's May requests for admissions, nor in the documents produced in conjunction with the October deposition of Plaintiff's president. When Defendant's August 2005 interrogatories and request for production also produced insufficient responses, Defendant filed a motion to compel production. Defendant's motion to compel was heard on October 19, 2005, at which time there had already been two extensions of the discovery and motion cut off dates, originally set on March 24, for July 30 and August 30. The new discovery cut off date was November 30. As noted above Plaintiff was ordered on October 20 to provide Defendant with all documents in its possession that support its claim for damages on or before November 2, 2005. Plaintiff was warned that it could not use any documents on damages at trial not produced by that date. The documents were being brought and sent from Las Vegas by one of Plaintiff's attorneys. While he arrived back in Michigan late on November 2 with some of the documents and others being sent, the documents were not fully made available for inspection by defense counsel until November 4, 2005. Apparently those portions desired were copied for Defendant's counsel by November 14, 2005.

Defendant filed a motion to enforce this Court's October 20 Order and strike the damages documents for Plaintiff's failure to comply with the October 20 Order after a pattern of repeated delays and neglect of its discovery production obligations. On December 14, 2005, Defendant's motion to strike the documents was heard and denied "notwithstanding the logic of their assertion that court orders are to be obeyed, the short time difference in the production, what appears to be a good faith, albeit belated, effort that constituted substantial compliance with the October 19 order, and the lack of prejudice in the few day delay to Defendant does not warrant the sanction Defendant seeks. Therefore, the documents may be used to support Plaintiff's damage claim." (Dkt. # 3

Slip Copy
Slip Copy, 2006 WL 1042072 (E.D.Mich.)
(Cite as: 2006 WL 1042072 (E.D.Mich.))

Page 4

8). But as noted above, this Order specified that, "No additional documents of Plaintiff may be used by Plaintiff's counsel or expert to support its damage claim." The parties were also warned that failure to comply with the terms of the December 14, 2005, order *"shall* result in the waiver of its right to have an expert testify at trial on damages and any consequences resulting from this exclusion." *Id.* (emphasis added).

*5 The parties agree that subsequent to the December 14, 2005, Order the following events transpired:
> December 21-22, 2005--Plaintiff's counsel and United States based accounting expert, meet with Plaintiff and the expert's affiliated Mexican field office accountant in Mexico City in order to complete its expert damage report.
> January 3, 2005--Plaintiff's expert report is forwarded to Defendant.
> January 30 and 31, 2006--Defendant deposes Plaintiff's expert witnesses.
> February 23, 2006--Plaintiff's produce 1,370 documents which their expert's relied on in formulating their damages calculations.

(Dkt.# 52, p. 5).

Defendant's current motion asks that the Court **strike** all documents produced after the Court's November 14, 2005, deadline and Plaintiff's experts and **expert report**, pursuant to the Court's December 14, 2005 order.

Defendant contends that 1,347 of these 1,370 pages of documents had not been produced before. It is also not disputed that Plaintiff's expert relied on certain, if not all, of these added documents in forming his expert opinion and in preparing his expert report. At the hearing on this motion, defense counsel asserted that Plaintiff's expert acknowledged that he could not have prepared a suitable damages report based on the documents produced to Defendant by November 14, 2005. This need for additional documents apparently necessitated the December 21-22, 2005, trip to Mexico by Plaintiff's United States based expert. At the hearing Plaintiff's counsel acknowledged that even the methodology for measuring damages changed from that noted to the Court at earlier hearings.

Defendant argues it has been prejudiced by taking the deposition of Plaintiff's experts and having its expert prepare a report without having knowledge of these added documents beforehand

II. ANALYSIS

Unlike the earlier hearing when Defendant's motion to **strike** the damages documents was denied because of Plaintiff's substantial compliance within a few weeks of the deadline and no showing of prejudice, here there has not been substantial compliance and the 100 plus days delay in producing these new damages documents has prejudiced the defendant, who acted in reliance on the incomplete November document production, deposed Plaintiff's experts and purportedly prepared a defense **expert report**. Plaintiff does not allege that it complied or even essentially complied with the December 14, 2005, Order. Instead, Plaintiff bemoans the consequences of this Court enforcing its orders and threatened sanctions. Plaintiff's counsel once again argues the obstacles he faced in obtaining documents from his foreign client and again asks the Court to disregard the sanctions that were so unequivocally expressed. Yet, the problems of production from Plaintiff could and should have been anticipated by the summer or early fall of last year. One must look with suspicion at the facts surrounding this last production.

Plaintiff's December motion only sought more time for its expert to complete his report. Yet, Plaintiff's counsel has had at least since last summer to get a clear outline of documents his expert needed to prepare a damages report. Why these documents could apparently be obtained on the expert's two day trip to Mexico on December 21 and 22, but not in the many months before the November deadline is unexplained. [FN3] Plaintiff did not raise the issues of a need to gather more documents from Mexico at the October 19, 2005, hearing on Defendant's motion to compel discovery, nor at the December 13, 2005, hearing on Defendant's motion to strike documents, even though his damages expert apparently planned to head south a week later. After Plaintiff's counsel became aware that its experts required more documents and prior to the production of its expert report and/or deposition of his expert there was never a motion filed by Plaintiff seeking more time to produce its own discovery or seeking relief from the October 20 or December 14 orders limiting the data base for its expert. Indeed, Plaintiff did not even inform defense counsel of the existence of these newly retrieved documents prior to or in conjunction with the production of the expert report and expert deposition. [FN4] Instead, it delayed production of these documents until February 23, 2005, after allowing Defendants to rely on its expert report, produced January 3rd, and expert depositions, taken January 30-31 st. Therefore, while striking the tardy

Slip Copy
Slip Copy, 2006 WL 1042072 (E.D.Mich.)
(Cite as: 2006 WL 1042072 (E.D.Mich.))

Page 5

documents and Plaintiff's damages experts may well be fatal to Plaintiff's proof of damages, Plaintiff's actions and inactions in light of the Court's previous warnings justify such an outcome.

> FN3. With the new mass of documents obtained on this December trip to Mexico, Plaintiff's expert was apparently able t prepare a damages report to meet the January 3, 2006, extended deadline.
>
> FN4. It appears from Defendant's counsel argument at the hearing in this matter that one of Plaintiff's experts may have testified at his January 2006 deposition, after his report was submitted, that he did not rely on the documents produced in November 2005, thereby giving Defendant some notice that other documents were used. Yet, these documents were not produced at the deposition by Plaintiff or his experts.

*6 While discovery sanctions limiting evidence properly imposed under Fed.R.Civ.P. 37(b)(2) do not need to meet the standards for a formal dismissal of a claim, the facts here would meet those more strenuous standards. The Sixth Circuit considers four factors when considering dismissal under either Rule 37(b)(2) or Rule 41(b):

> '(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.'(quoting Knoll v. Am. Tel. & Tel. Co., 176 F.3d 359, 363 (6th Cir.1999)). 'Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct' Id. Bryant v. U.S., ex rel. U.S. Postal Service, 2006 WL 305661, *3 (6th Cir.2006).

At a minimum, Plaintiff is at fault for failing to comply with Defendant's discovery requests and the Court's orders to produce its damages documents. Now Defendant has been prejudiced by the fact that Plaintiff did not produce its damages documents for its expert prior to Plaintiff producing its expert report and experts for depositions. Plaintiff's argument that these documents were not requested until after the deposition is without merit because Defendant had no notice that any other documents existed before that time and because there was already a court order in place stating that all documents that would be allowed to support of damages had been produced as of November 14, 2005.

Regarding the *Knoll / Bryant* third criterion, Plaintiff had been warned of the sanctions for non-compliance in two previous orders. The October 20, 2005, Order stated that only documents produced by November 2, 2005, could be used to support Plaintiff's claim for damages. The December 14, 2005, Order allowed documents produced by November 14, 2005, to be used to support Plaintiff's claim for damages, but was explicit that Plaintiff and its experts could rely on no other documents. That Order was also explicit that the sanction for non-compliance would be a "waiver of its right to have an expert testify at trial on damages and any consequences resulting from this exclusion". This Order was issued the day after Plaintiff's counsel was warned at the hearing that the next order will contain "Draconian language" for any further failure to comply and this time the Court "will mean it."

The undersigned has considered and in the past imposed less drastic sanctions for Plaintiff's failure to comply with discovery requests and orders. Plaintiff was allowed to produce documents late in violation of the October discovery Order, required instead to pay Defendant's attorney fees in connection with attempting to enforce the Order and produce its experts for deposition in Michigan.

Plaintiff's counsel requested at the hearing an alternative sanction of only striking the additional documents produced in February 2006 but allow its experts to testify. Yet, this would involve reopening discovery for a new expert report and further depositions. Defense counsel suggested that, based on the testimony of Plaintiff's experts, it was unlikely if not impossible for Plaintiff's expert to produce a damages report on the documents produced on or before November 14. Because of the complexities and uncertainties as to the feasibility of such an approach, it should not be entertained by way of an oral motion to allow a new Plaintiff damages report and testimony.

*7 The motion before the Court is to strike the report and testimony of Plaintiff's experts that were based on materials not produced to Defendant in the time period allowed and preclude use of the new damages documents at trial. The analogy used at the hearing on this motion to strike was that Plaintiff was given a deadline, and then an extended deadline, to produce the "deck of cards" on damages that it wished to use in this case. Then, without prior notice nor prior

Slip Copy
Slip Copy, 2006 WL 1042072 (E.D.Mich.)
(Cite as: 2006 WL 1042072 (E.D.Mich.))

Page 6

Court permission Plaintiff chose to add a significant number of cards to the deck that had been used in formulating its expert damages report. While after the expert depositions Plaintiff finally decided to provide the Defendant the modified deck of damages documents, this does not undo nor justify the prior wrongdoing. Plaintiff's counsel again asks for "pardon" instead of "permission." Plaintiff has received multiple discovery deadline extensions, and has used up its "pardon" after missing the earlier November 2, 2005, document production deadline and its December 1, 2005, expert report deadline. The reasonable "storehouse of credits" that attorneys generally have with indulgent courts has, in this case, run out. While striking the expert report and any use of the new documents produced in February 2006 and any expert testimony based on them is a harsh sanction, it should come as no surprise in light of the clear warnings. Nor, on the facts of this case, is it unwarranted. Plaintiff was given ample opportunity to comply with Defendant's discovery requests and this Court's orders. Its failure to do so has drawn the promised penalty. At some point court-ordered deadlines must be met or threatened sanctions imposed. To hold otherwise in this case would retard the orderly processing of civil litigation, needlessly increase the transaction costs for all and erode the stature of courts by rendering all of its orders negotiable.

Accordingly, Defendant's motion to **strike** is granted and Plaintiff's additional damages documents produced in February 2006 are stricken from the discovery, Plaintiff's **expert report** is stricken, any expert who participated in preparing the report based on the stricken documents is stricken from the witness list and may not testify at trial, nor may there be any testimony at trial based on the stricken documents.

SO ORDERED.

Slip Copy, 2006 WL 1042072 (E.D.Mich.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 358387 (Trial Motion, Memorandum and Affidavit) Webasto Roof Systems, Inc.'s Reply Brief in Support of Motion for Summary Judgment on Statute of Limitations (Jan. 17, 2006)

• 2006 WL 399881 (Trial Motion, Memorandum and Affidavit) Sunroof de Mexico's Response to Webasto Roof Systems Inc's Motion for Summary Judgment on Statute of Limitations (Jan. 5, 2006)

• 2005 WL 3721979 (Trial Motion, Memorandum and Affidavit) Defendant Webasto Roof System Inc.'s Reply to Plaintiff's Response to Motion to Strike Documents (Nov. 30, 2005)

• 2005 WL 3721978 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendant's Motion to Strike Documents Pursuant to the October 20, 2005 Order (Nov. 28, 2005)

• 2005 WL 3721977 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply Brief in Support of its Motion for Partial Summary Judgment as to Liability Only (Nov. 14, 2005)

• 2005 WL 3721976 (Trial Motion, Memorandum and Affidavit) Defendant Webasto Roof System Inc's Motion to Strike Documents Pursuant to the October 20, 2005 Order (Nov. 10, 2005)

• 2005 WL 3721975 (Trial Motion, Memorandum and Affidavit) Webasto Roof Systems, Inc.'s Opposition to Plaintiff's Motion for Partial Summary Judgment and Webasto Roof Systems, Inc.'s Request for Relief (Nov. 4, 2005)

• 2005 WL 2915905 (Trial Motion, Memorandum and Affidavit) Defendant's Brief in Support of Motion to Compel Answers to Discovery (Sep. 19, 2005)

• 4:05cv40031 (Docket) (Jan. 31, 2005)

END OF DOCUMENT

# EXHIBIT C

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32124959 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

H
Concerned Citizens of Belle Haven v. Belle Haven ClubD.Conn.,2002.Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
CONCERNED CITIZENS OF BELLE HAVEN, et al.
v.
THE BELLE HAVEN CLUB, et al.
No. Civ. 3:99CV1467 (AHN.

Oct. 25, 2002.

*RULING ON PENDING MOTIONS*
NEVAS, J.
**\*1** Presently before this court are plaintiffs' motion for leave to file a third amended complaint, defendants' motion to strike plaintiffs' second amended complaint, and plaintiffs' motion for sanctions. For the reasons that follow, plaintiffs' motion for leave to file a third amended complaint [doc. # 78] is GRANTED, defendants' motion to strike the second amended complaint [doc. # 67, 71] is DENIED as moot, and plaintiffs' motion for sanctions [doc. # 83] is DENIED.

*Factual Background*

The plaintiffs are the Concerned Citizens of Belle Haven, an association of individuals who own land in Belle Haven, and six individual property owners in Belle Haven, Lawrence and Jennifer Goichman, and Allan, Nancy, Matthew, and Hilary Bernard (collectively "plaintiffs"). The defendants are the Belle Haven Club, Inc. (the "Club"), the Belle Haven Land Owners Association (the "Association"), the Belle Haven Land Co., Inc. ("Land Co."), the Belle Haven Tax District ("Tax District"), and Mary Carpenter and C. Bradley Miller, two individuals who are trustees of the Land Co. and also members of the Club ("Trustees") (collectively "defendants").

Belle Haven is a residential community in Greenwich, Connecticut. The Land Co. was the original owner of all of the property that comprises Belle Haven. In 1884, the Land Co. was established as a privately-owned stock corporation. Over time, the Land Co. sold its land as residential lots, but retained ownership of certain property, including property occupied by a beach club and the common areas. After the land was substantially developed, ownership of the Land Co. was conveyed to the residents of Belle Haven who formed the Association.

The Association is an unincorporated, voluntary association created in 1897 which directs the Trustees of the Land Co. on how to manage the land retained by the Land Co. in order to benefit all of the landowners. The Association's membership is comprised of the individuals who own residential lots in Belle Haven. Members of the Association must pay the expenses for managing the affairs of the Association. The amount paid is proportionate to the value of their property as determined by the Town of Greenwich. Members of the Association pay real estate taxes to the Town of Greenwich and separate taxes to the Tax District. The members of the Association review the Land Co.'s proposed budget and instruct the Trustees with respect to levying a tax on the property owners for the purpose of meeting the expenses and obligations of the Association.

The Club is a non-profit corporation that operates a yacht club on land which is leased from the Land Co. Historically, membership in the Club was limited to residents of Belle Haven, and all of the members of the Association were automatically entitled to membership in the Club. Presently, individuals who are not residents of Belle Haven have been admitted to membership in the Club, and residents of Belle Haven are no longer automatically entitled to Club membership.

*Procedural History*

**\*2** The procedural history of this case is somewhat complex. On August 4, 1999, plaintiffs filed a complaint alleging, *inter alia,* that defendants were engaged in a discriminatory system of taxation and raised challenges to the overall tax system invoking the Tax Injunction Act, 28 U.S.C. § 1341. Defendants moved to dismiss the complaint claiming that this Court lacked jurisdiction to hear plaintiffs' claims. On May 8, 2000, the Court granted defendants' motion to dismiss the original complaint without prejudice to refiling a new complaint that did not implicate the Tax Injunction Act.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32124959 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

On June 5, 2000, plaintiffs filed their first amended complaint raising allegations of tax-related discrimination. Defendants again moved to dismiss the first amended complaint for lack of jurisdiction. The Court held a hearing on September 12, 2001. At the oral argument, plaintiffs' counsel withdrew any challenges directed at the system of tax collection and maintained that plaintiffs' challenge was limited solely to the expenditure of the tax revenue. Plaintiffs' counsel alleged that challenging the distribution of tax monies would not invoke the Tax Injunction Act.

In its ruling filed September 25, 2001, the court concluded that because the complaint, as pled, raised challenges to the overall system of taxation, the court lacked jurisdiction to hear those claims and therefore dismissed the first amended complaint. The court granted plaintiffs until October 20, 2001 to file a second amended complaint to advance the argument raised by plaintiffs' counsel at oral argument. *See Ruling, Concerned Citizens of Belle Haven v. The Belle Haven Club,* 3:99 CV 1467(AHN) (D. Conn September 25, 2001) [doc. # 59].

Immediately after the September 12, 2001 hearing, plaintiffs' retained new counsel. On October 16, 2001, within the time-frame imposed by the Court, plaintiffs' new counsel filed a second amended complaint. Plaintiffs' second amended complaint did not raise the tax expenditure claims advanced by plaintiffs' former counsel at the September 12, 2001 oral argument; rather, the proposed second amended complaint advanced new theories of liability relating to defendants' alleged discriminatory practices.

On November 13, 2001, defendants' moved to strike the second amended complaint. Defendants' assert that the new theories of recovery raised in the second amended complaint violate the court's September 25, 2001 ruling which permitted amendment only for the purpose of raising tax expenditure challenges. Defendants further contend that plaintiffs' failure to timely file an amended complaint that complied with the court's September 25, 2001 ruling is fatal to their case.

Thereafter, on November 20, 2001, the court held a pre-motion conference to discuss defendants' motion to strike. Defendants renewed their objections and plaintiffs stated that they intended to file a motion for leave to file a third amended complaint.

*3 On or about December 20, 2001, plaintiffs filed a motion for leave to amend their complaint together with a proposed third amended complaint. Approximately, two weeks earlier, on or about December 5, 2001, plaintiffs filed a separate lawsuit, *Bernard v. The Belle Haven Club, Inc. et. al.,* 3:01 CV 2276(AHN), which contains identical allegations as those in plaintiffs' proposed third amended complaint.[FN1]

> FN1. It is apparent that plaintiffs' intention in filing a new lawsuit was to preserve their claims and prevent the statute of limitations from running on their claims in the event that they are denied permission to amend in this case.

In their response to the plaintiffs motion for leave to file an amended complaint, defendants raise several arguments. First, defendants assert that the Court's September 25, 2001 ruling granted a conditional leave to amend and thus precluded the right to plead further claims. Defendants also claim that plaintiffs failure to timely file an amended complaint that comported with the September 25, 2001 ruling resulted in an automatic dismissal of their case. Finally, defendants argue that even under the governing standards of Fed.R.Civ.P. 15(a), amendment is not warranted.

*DISCUSSION*

I. *Motion For Leave to File An Amended Complaint*

As a preliminary matter, the court finds that its September 25, 2001 ruling did not prohibit further amendment. As noted above, the only new argument raised by plaintiffs' prior counsel at the September 12, 2001, oral argument was a tax expenditure claim. Thus, at the time of its ruling on September 25, 2001, the court had not been presented with any other theories of recovery. The court's ruling, therefore, did not contemplate whether or not amendments to add other theories of recovery would be permitted. Because the court's ruling was not conditional, defendants' argument that this case was automatically dismissed when plaintiffs filed an amended complaint that did not conform to the Court's ruling fails, leaving open the issue of whether plaintiffs' new theories of recovery should be permitted under Fed.R.Civ.P. 15(a).

It is well established that leave to amend a complaint is liberally granted. Rule 15(a) of the Federal Rules

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32124959 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

of Civil Procedure states that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The policy of favoring liberal amendments ensures the determination of claims on their merits rather than on technicalities. "[T]he federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48 (1957).

In Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court enunciated factors that weigh against amendment. These include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Id. at 178.

Plaintiffs claim that this case clearly falls within the ambit of cases warranting amendment. They assert that the claims alleged in the third amended complaint arise out of the same conduct, transactions and occurrences alleged in the initial two complaints. In addition, they point out that the new complaint does not invoke the Tax Injunction Act and therefore cures the jurisdictional defect that required dismissal of the first two complaints. Finally, plaintiffs argue that there has been no unreasonable delay and no prejudice to defendants because formal discovery had not begun at the time they filed their motion.

*4 In opposition, defendants contend that liberality is not warranted in this case because plaintiffs have already been given ample opportunity to properly plead their claims and they have failed to do so. In addition, defendants claim that permitting amendment at this juncture will be prejudicial because they have expended considerable personal and financial resources in defending the first two complaints, and the allegations in the proposed amended complaint bear no relationship to plaintiffs' earlier claims. Defendants also argue that plaintiffs have been unduly dilatory in raising the claims alleged in the third amended complaint. The Court finds that the course of this litigation supports the conclusion that amendment is warranted.

While all of the criteria noted above are relevant to the court's consideration, resulting prejudice to the defendants is the most important factor in the court's analysis. See Howey v. U.S., 481 F.2d 1187, 1190 (9th Cir.1973) (holding prejudice is the most crucial factor).

Defendants' claim that they have expended considerable resources defending the allegations in the first two complaints which bear no relationship to the allegations raised in the third amended complaint does not constitute prejudice warranting denial of amendment.

First, the original complaint and the proposed third amended complaint both allege violations under 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 2000a. Moreover, since the commencement of this action, defendants have been aware of plaintiffs' claim that they are being unlawfully excluded from the Club on account of their religion. See Court Tr. Of 9/12/01 hearing at 35-41 [doc. # 62] (discussion between defendants' counsel and court regarding this issue). Defendants cannot now claim to be surprised or prejudiced by this allegation which is the central focus of the third amended complaint. Defendants claim of prejudice is further undermined by the fact that they continue to defend the allegations claimed in plaintiffs' second lawsuit, which is identical to plaintiffs' third amended complaint. Finally, where, as here, plaintiffs seek to amend before the commencement of formal discovery, defendants simply cannot demonstrate that their ability to defend this case would be impaired if amendment were allowed.

In addition to showing insufficient prejudice, the defendants have failed to establish that any of the other factors that militate against amendment-bad faith, repeated failure to cure a deficiency by amendments previously allowed, or undue delay-are present. See Foman, 371 U.S. at 182.

The fact that plaintiffs have been provided other opportunities to replead is not a sufficient ground to deny the proposed amendment. Although the original complaint and the amended complaint were defective, plaintiffs new counsel acted diligently to file an amended complaint that cured the jurisdictional defects inherent in the earlier two complaints. Moreover, the proposed third amended complaint raises the same claims as the second, but sets forth the relevant facts in greater detail. On these facts, and in the interests of justice, plaintiffs should not be denied the opportunity to test the merits of their claims.

*5 Similarly, defendants' claim of undue delay is without merit. The Second Circuit has made it clear that delay, without more, cannot be the basis to deny an amendment and has routinely excused delays of

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32124959 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

more than two years. *See, e.g., Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987) (citing cases). Indeed, an amendment may be permitted at any point during the course of litigation. *See Foman*, 371 U.S. at 181-182 ("in the interest of justice," leave to amend may be necessary even at post-judgment stage). Moreover, some of the delay in this case can be attributed to the more than twenty extensions of time requests filed by the parties. Also, both parties engaged in mediation which delayed the litigation for a period of time. Defendants have failed to show that the length of time which has passed will cause them undue hardship in defending against plaintiffs' allegations. Accordingly, plaintiff's motion for leave to file a third amended complaint is granted. Consequently, defendants' motion to strike the second amended complaint is denied as moot.

## II. *Motion for Sanctions*

As noted above, at the court's recommendation, both parties agreed to engage in mediation. The mediation agreement contained a confidentiality provision that states:

All statements made or documents submitted for a session are confidential and "for settlement purposes" only. No mediator may be called to testify at any subsequent hearing or trial.

After the mediation conference, the Club published an article in its "Newsmagazine" that stated in relevant part:The federal judge sent the matter to mediation, but after two full days of mediation in which the Club was prepared to accept the solution posed by the mediator, the claimants refused to agree to the recommendations of the mediator.

Plaintiffs' assert that this article violates the confidentiality agreement and seek sanctions against defendants. Defendants respond that the publication did not constitute a breach of the confidentiality provisions in that publication was necessary because of their duty to inform members of the Club of the outcome of the mediation. If the notice had simply indicated that mediation has taken place but had been unsuccessful, that would have been appropriate. However, the purpose of the clause was to prohibit disclosure of the nature of the mediation discussions. Mediation provides a vital alternative to litigation. The success of mediation depends, in part, on the ability of the parties to freely and openly discuss the relevant issues. Accordingly, confidentiality is a critical component of this process. *See Bernard v. Galen Group. Inc.*, 901 F.Supp. 778, 782-84 (S.D.N.Y.1995) (court imposed sanctions where attorney disclosed settlement offers made in mediation proceeding); *Cohen v. Empire Blue Cross & Blue Shield*, 178 F.R.D. 385 (E.D.N.Y.1998) (court imposed sanctions where attorney violated confidentiality provisions of court-annexed mediation program).

*6 Moreover, even if the defendants were required to disclose the mediation outcome to their constituency, it was certainly not necessary to publish it in the Club's "Newsmagazine" or use the self-serving language contained in the article. The Club's statements regarding this litigation did more than just announce the outcome. The clear implication of the statements in the article is, at best, that plaintiffs acted unreasonably. This only serves to increase animosity between the parties. Nevertheless, the court finds that court-imposed sanctions are not warranted on these facts. In the event that future discussions take place, those officers of the defendants who participate in such discussions shall be bound by any confidentiality agreements then in effect.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for leave to file a third amended complaint is GRANTED. The Clerk is directed to file the proposed third amended complaint. Defendants' motion to strike plaintiffs second amended complaint is DENIED as moot, and plaintiffs' motion for sanctions is DENIED. The Clerk is directed to CLOSE the second lawsuit captioned *Bernard v. Belle Haven Club, et. al*, 3:01 cv 2276(AHN) and to transfer the file to this case. The Court will enter an Order referring this case to Magistrate Judge Fitzsimmons for discovery.

D.Conn.,2002.
Concerned Citizens of Belle Haven v. Belle Haven Club
Not Reported in F.Supp.2d, 2002 WL 32124959 (D.Conn.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.