**EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IRWIN SEATING COMPANY, | ) |
| | ) |
| Plaintiff, | ) No. 1:04-cv-00568-RHB |
| | ) |
| v. | ) Hon. Robert Holmes Bell |
| | ) Judge |
| INTERNATIONAL BUSINESS MACHINES | ) |
| CORPORATION and J.D. EDWARDS | ) Hon. Hugh W. Brenneman, Jr. |
| WORLD SOLUTIONS COMPANY, | ) Magistrate Judge |
| | ) |
| Defendants. | ) |
| | ) |

**Plaintiff Irwin Seating Company's Reply Brief in Support of its
Appeal of Order Striking Expert Witnesses**

Joseph Goldberg
John W. Boyd
Michael L. Goldberg
**Freedman Boyd Daniels, Hollander
Goldberg & Ives, P.A.**
20 First Plaza, Suite 700
Albuquerque, NM 87102
505-842-9960

Donald Perelman
**Fine, Kaplan & Black, R.P.C.**
1835 Market Street, 28th Floor
Philadelphia, PA 19103
215-567-6565

Daniel E. Gustafson
Jason S. Kilene
**Gustafson Gluek PLLC**
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
612-333-8844

Aaron M. Phelps
Kaplan S. Jones
**Varnum Riddering Schmidt & Howlett**
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501
616-336-6257

**Attorneys for Plaintiff and Appellant, Irwin Seating Company**

# BACKGROUND

This litigation arises out of the installation of a defective system of software and hardware at Irwin Seating Company's (herein, "Irwin") facilities at Grand Rapids. The parties agreed to mediation, and confidential mediation briefs were filed with the mediator on January 11, 2006 (by Irwin and International Business Machines (herein, "IBM")) and on January 12, 2006 (by JD Edwards (herein, "JDE")). The mediation, conducted in January 2006, was unsuccessful.

After the unsuccessful mediation was concluded, Irwin's counsel included copies of IBM's and JDE's mediation statements, as well as its own, with materials sent to Irwin's own retained experts Marianne DeMario and Jeff Hagins. Irwin served its expert reports on IBM and JDE on April 18, 2006, well after the conclusion of the mediation. Both Ms DeMario and Mr. Hagins stated in their reports that the mediation statements were among the documents they received and reviewed.

On May 5, 2006, IBM moved to strike Irwin's experts (Doc. No. 195) on the ground that their opinions would be tainted by their exposure to IBM's mediation statement. IBM sought "severe sanctions" against Irwin for its "violation of mediation or ADR confidentiality rules or orders ...." IBM's Memorandum in Support of its Motion to Strike (Doc. No. 196, herein, "IBM Memo"), p. 6. JDE joined in IBM's motion. Doc. No. 210. The matter was briefed to and argued before Magistrate Judge Hugh W. Brenneman, Jr. on June 12, 2006.

On November 29, 2006, Judge Brenneman entered his Order granting IBM's Motion. Doc. No. 310. Judge Brenneman found that "there is no adequate way to assess the impact the mediation briefs had on the experts" (Order at p. 6), but concluded that "[a]ny cross examination [of Plaintiff's experts], of course, runs the risk of touching on the privileged communications." *Id.* He found that Irwin's conduct "strikes at the heart of the ADR process," (*id.* at p. 7) and he struck Plaintiff's experts' reports and precluded the experts from testifying at trial.

ARGUMENT

A. <u>IBM and JDE misstate the standard of review. The factual determinations that underlie the Magistrate Judge's Order striking Irwin's experts must be based on evidentiary support in the record before him.</u>[1]

The test for reviewing on appeal a magistrate judge's ruling on a non-dispositive matter is well established in this Circuit, and is set out in Irwin's Opening Brief at pp. 2-3. The Court will reverse the Magistrate Judge's ruling on non-dispositive matters where it is "clearly erroneous or contrary to law." 28 USC § 636(b)(1)(A); *Mich.L.Civ.R.* 72.3(a).

As to the "contrary to law" horn, the Court reviews the magistrate judge's ruling for abuse of discretion – when the magistrate judge has improperly applied the law or has used an improper legal standard. *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir. 1985); *Black Law Enforcement Officers Ass'n. v. City of Akron*, 824 F.2d 475, 479 (6th Cir. 1987). The "contrary to law" horn applies when the magistrate judge's ruling is based on interpretation of statutory or decisional law or the application of legal standards.

The "clearly erroneous" standard, on the other hand, governs when the magistrate judge's

---

[1] IBM leads off its opposition with a semantic sniggle. Irwin argues that the sanction of striking the expert reports and prohibiting the experts' testimony at trial was excessive, disproportionate to Plaintiff's conduct and the circumstances. Irwin's <u>Statement of Appeal of Order Striking Expert Witness</u> (herein, "Irwin Opening Brief"), pp. 3-9. IBM argues that Judge Brenneman did not strike Plaintiff's experts as a sanction, but rather as a "remedy" for Plaintiff's violation of the confidentiality of the mediation process, suggesting that the Court need not address, therefore, the question of whether it was excessive or whether Irwin acted in bad faith. <u>IBM Opp</u>, pp.1, 4-5, 8. This new, and late blossoming, theory is directly contrary to IBM's argument in support of its motion. In IBM's Motion, which Judge Brenneman granted, IBM specifically asked for "sanctions" by name. "The violation of mediation or ADR confidentiality rules or orders should mandate severe sanctions ...." <u>IBM Memo</u> at p. 6. "The Court has broad discretion in fashioning an appropriate sanction for Irwin's violation of the mediation confidentiality *** As set forth below, such sanction should, at a minimum, include striking Irwin's experts and reports ...." *Id.* at p. 7. JDE more forthrightly acknowledges that the sanction is "punishment." <u>JDE Opp.</u>, p.4. Whether styled as a sanction or a remedy, the Court's determination of this appeal is essentially the same.

ruling is based on factual findings or factual determinations.

> A finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. The question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one that the reviewing court would draw. Rather the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one.

*Heights Community Congress* v. *Hilltop Realty. Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

Neither JDE nor IBM properly address the standard by which this Court will review the Magistrate Judge's ruling. IBM's argument that to prevail on this appeal Irwin must "demonstrate that Judge Brenneman's ruling is contrary to law or clearly erroneous" (IBM Opp, p. 5) overlooks the fact that there really are two separate standards of review, depending on whether the magistrate judge's ruling is premised on findings of fact or on conclusions of law; and IBM ignores the more pertinent inquiry: how does this Court determine whether the Magistrate Judge's ruling was "clearly erroneous?" JDE asserts that "[t]he only issue for review is whether Judge Brenneman abused his discretion in striking Irwin's experts." JDE Opp, p. 2; "Under the ... abuse of discretion standard, Irwin cannot establish ...." *Id.*, p.4. JDE recites the standard of review for the "contrary to law" horn of the Court's review function; while IBM just fails to distinguish between the two horns.

Both JDE (Opp, pp. 2-4) and IBM (Opp., pp. 7-8) suggest that Irwin has not challenged Judge Brenneman's factual findings. Irwin does not challenge the factual findings that it provided the mediation statements to its experts, but the ruling includes other factual findings that Irwin does challenge. Judge Brenneman finds as a matter of fact that "[a]ny cross-examination [of Irwin's experts] runs a risk of touching on the privileged communications." Order, p.6. He also finds that Irwin's experts' opinions were based in meaningful part on the contents of IBM's and JDE's

mediation statements. *Id.*[2] Finally, Judge Brenneman makes the factual determination that providing defendants' mediation statements to the experts was destructive of the mediation process. *Id.*, p. 7 ("plaintiff's counsel's behavior is sharing these materials with unauthorized persons strikes at the heart of the ADR process.") Because Judge Brenneman's order is based on these critical factual findings, the Court must apply the "clearly erroneous" horn of the standard of review. "[T]he test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one." *Hilltop Realty. Inc.*, 774 F.2d at 140.

In fact, there is no "evidence" in the record before Judge Brenneman, to support the factual findings that are the underpinning of his determination to strike Irwin's experts. The mediation statements themselves were not made available to Judge Brenneman. All he had was IBM's and JDE's characterizations of the contents of their mediation statements.

Irwin was put in an awkward and extremely unfair position. Responding to a motion asserting that it had improperly disclosed confidential mediation material outside of the mediation, Irwin could not describe IBM's and JDE's mediation statements in detail to demonstrate that the Defendants could not have been prejudiced or that the mediation process could not have been

---

[2] Judge Brenneman observes that Irwin's experts denied having been influenced or even recalling the contents of the defendants' mediation statements. <u>Order</u> at pp.4-5. He makes the factual conclusion nonetheless that –
> [e]ven in denying any recall of what defendants positions were in the reports, both experts concede these briefs were among the first documents they read "in order to gain some sense of what the case was about." The bell has been rung. There are simply some things that cannot be forgotten once they are learned.

*Id.*, p. 6 (footnote deleted). Judge Brenneman assumed that defendants' mediation statements contained meaningful, substantive discussion of IBM's and JDE's perceived weaknesses in their positions and the defendants' litigation strategy even while acknowledging that "there is no adequate way to assess the impact the mediation briefs had on the experts, and how the experts may have shaped their evaluations consciously or unconsciously." *Id.*

impaired. IBM, on the other hand, asserted that the mediation statements contained "each party's assessment of the strengths and weaknesses of the claims and defenses at issue." <u>IBM Reply Memorandum in Support of Motion to Strike</u> (Doc. No. 218) at p. 7. IBM was implicitly representing that its mediation statements contained frank self-assessments of the weaknesses of its case. Any reading of IBM's mediation statement would belie IBM's representations that it contained frank (much less any) assessments of its weaknesses. Even without a reading of the statement, IBM's representations are contrary to common sense. The mediation statements were sent to the mediator and to opposing counsel. While IBM might concede its weaknesses in a communication solely to the mediator, it surely would not concede weakness in a communication to opposing counsel. At the hearing, IBM went further, suggesting that it admitted things in its mediation statement that it would not admit in court. IBM's counsel complained that "what their experts did is read that unvarnished assessment ...."[3] <u>Transcript, Hg of June 12, 2006</u> at 11:5-14. All Irwin could do was to deny generally that IBM's mediation brief contained such substantive acknowledgments of weaknesses in their positions or of litigation strategy. *See, id.* at 21:12 - 22:18.

And the Court was in an awkward position as well, since it was impossible for the Court to develop the evidentiary record necessary to make the requisite factual determinations. Indeed, aside from Irwin's acknowledgment that it did send the mediation statements to its experts, the only evidentiary "facts" before Judge Brenneman were the affidavits of Ms DeMario and Mr. Hagins that they did not recall the contents of the defendants' mediation

---

[3] IBM tones it down somewhat in its opposition to this appeal, stating that the mediation statement contained its "mediation 'game plan'" <u>IBM Opp</u>, p. 2. If so, there could be no harm to IBM of exposing Irwin's experts to IBM's "mediation game plan" as the mediation had been concluded, unsuccessfully, long before the statements were provided to Irwin's experts.

statements, and denying that their opinions were in any way based on those mediation statements. Judge Brenneman found that evidence unpersuasive and disregarded it. Order, pp 4-5 and n.2.

Contrast the slender bases for Judge Brenneman's factual findings in this case with that available to the magistrate judge in *Nisus Corp.* v. *Perma-Chink Systems, Inc.*, 327 F.Supp.2d 844 (E.D.Tenn. 2003). There, the magistrate judge, after a *Daubert* hearing, granted the defendant's motion to exclude the report and testimony of the plaintiff's expert, on the grounds that the expert's methodology was unsound, lack of experience, reliance on inherently inaccurate measurements and failure to follow reproducible procedures. The plaintiff then sought leave for its expert to submit a supplemental report. The court was reviewing on appeal the magistrate judge's denial of that motion for leave to file a supplemental report. The district court affirmed the magistrate judge's order as consistent with the substantial evidentiary record that had been developed.

There is no such evidentiary record here to support the factual determinations which underpin Judge Brenneman's Order. His factual determinations were based entirely on the unsworn representations of IBM's and JDE's lawyers as to the content of their mediation briefs from which representations Judge Brenneman extrapolated factual conclusions, even while acknowledging that "there is no adequate way to assess the impact the mediation briefs had on the experts, and how the experts may have shaped their evaluations ... in response to the claims made and positions taken by the defendants in their mediation briefs" (Order, p. 6) and that "[t]he extent of the damage done ... is not truly knowable ...." *Id.*, p. 7.

Because the applicable "clearly erroneous" standard requires that this Court, acting on this appeal, find that the Magistrate Judge's ruling based on factual determinations was supported by the record evidence, and because there was no evidence on the record before the Magistrate Judge

supporting the rulings, the Order disqualifying Irwin's experts must be overruled.

B.  There was no evidence on the record before the Magistrate Judge which could support such a draconian sanction.

Irwin does not deny that its counsel provided copies of the mediation statements to its experts. If the Court believes that in these circumstances that was a sanctionable offense, then the Court must determine the appropriate sanction. In its Opening Brief on this appeal, Irwin sets out a "totality of the circumstances" test for determining the appropriate sanction to be imposed on a party who violated the confidentiality of the mediation statement. Irwin Opening Brief, p. 6-7 (quoting In re Anonymous, 283 F.3d 627, 635 (4th Cir. 2002)). Among the circumstances –

> (3) the extent of willfulness or bad faith involved in the breach of the confidentiality Rule; (4) the severity or adverse impact of the disclosure on the parties or the case; and (5) the severity or adverse impact of the disclosure on the mediation program.

1.  Judge Brenneman ignored the essential question of good or bad faith, and there was no evidence of Irwin's bad faith.

Judge Brenneman discounted the "extent of willfulness or bad faith involved" in determining the appropriate sanction. "The court need not find a bad intent on the part of Irwin's lawyers ...." Order, p. 6. Both IBM and JDE urge this Court to ignore the factor of intent or good faith. IBM Opposition, p. 8 ("Counsel's motives, good or bad, are beside the point"); JDE Opposition, p. 7 ("However, Judge Brenneman properly concluded that the Court 'need not find a bad intent' on Irwin's part to impose the sanction it selected.") The question of whether Irwin acted in bad faith cannot be ignored. "In this Circuit, 'bad faith' is a requirement for the use of the district court's inherent authority" First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 519 (6th

Cir. 2002).[4] The Sixth Circuit observed that sanctions under the district court's inherent authority may also be appropriate where the court finds that the conduct was "tantamount to bad faith" and, with some reservations, that the finding of bad faith need not be explicit (*id.*) and that the existence of bad faith is a fact-based determination that must consider the actor's intent. *Id.* at 521 n.16.[5] Sanctions under the court's inherent authority must be carefully crafted in light of the violation. The "least possible power for the end proposed [] provides the ultimate test for a federal court's inherent power." *Helmac Products Corp.* v. *Roth (Plastics) Corp.*, 150 F.R.D. 563, 568 (E.D.Mich. 1993).

2. There was no evidence of an adverse impact on the parties

Judge Brenneman concluded that disclosure of the mediation statements to the experts would have a severe impact on the defendants. Order, p. 6. The Magistrate Judge points out that the mediation statements were accompanied by documents, as exhibits, that were highlighted by the parties. *Id.*, p. 2. Judge Brenneman's conclusion that there would be a detrimental impact on IBM and JDE is based on the assumption that IBM and JDE underscored the weaknesses of their case to the mediator. There is no evidence that IBM and JDE did this, and human nature and litigation practice would suggest just the opposite – that IBM and JDE stressed the strengths of their defenses, highlighting their strong points in their exhibits and downplaying the weaknesses of their case. Thus, Judge Brenneman's assumption that "any cross-examination [of Irwin's experts] runs the risk of touching on the privileged communications" (Order, p. 6) clearly assumes that IBM's and JDE's mediation statements include frank and uninhibited discussions of the weaknesses of their defenses.

---

[4] Neither IBM's motion nor the Order specify authority for imposing the sanction. Irwin assumes the authority is the Court's inherent authority to oversee and control litigation before it.

[5] Here there was no finding of bad faith, nor could there have been. Irwin's lawyers believed that the experts, who had signed the confidentiality agreement under the protective order, were qualified parties, entitled to review the statements pursuant to that order. Hg. Tr. at 18:18 - 19:12.

-8-

Such a conclusion can only be based on speculation, because the mediation statements themselves are not part of the record. At Judge Brenneman's prodding, IBM acknowledged that its mediation statement and highlighted exhibits were served on Irwin. Tr. at 10:8-15. So it is not likely that the documents would reveal privileged communications, work product or secret strategies.[6]

### 3. There was no evidence of adverse impact on the mediation process

Judge Brenneman could make no finding that the mediation of this case was affected because that mediation had already been unsuccessfully concluded long before the documents were provided to Irwin's experts. Judge Brenneman merely speculates: "The court is aware this resolution [*i.e.*, the sanction imposed] may also have a salutary effect in preserving confidences of future mediation participants, and the candor necessary to successful facilitative mediations. A contrary result would certainly have a dramatically contrary impact." Order, p. 7, n. 4. The speculative nature of this assertion is apparent on its face. It also is clear that there was no determination of whether a lesser sanction would have the same salutary effect on the ADR process.

IBM asserts that while Irwin argues that the sanction is too severe, "Irwin does not offer any alternative measures to correct the situation it created." IBM Opp, p. 5. The record is otherwise. At the hearing on IBM's motion, Irwin's counsel urged that counsel, not the client, be sanctioned. Hg. Tr. at 30:22 - 31:10. Sanctioning the attorney is the most appropriate resolution in these circumstances. Further, at the hearing, Irwin's counsel suggested that the Court consider whether either expert's opinion could have been tainted by their review of the mediation statements. Because

---

[6] The Court could make a record for this determination by asking the mediator or a special master, to report to the Court if there are concessions in IBM's or JDE's mediation statements which could have affected either expert's opinions. Irwin believes that such a report would indicate that there were no such damaging concessions and Irwin would offer to bear the cost of such review.

Ms DeMario was a damages expert, even if the statements contained damaging admissions of liability, that could not affect Ms DeMario's opinion since she assumed liability and merely did arithmetical calculations of damages. Mr. Hagins' opinion could not have been affected by any "admissions" or acknowledgment of culpability in the mediation statements because he did not opine about liability, but only about the defects in the software. Hg. Tr. at 23:11-22.

Irwin suggested another alternative. At the conclusion of the hearing, Judge Brenneman said: "even if I did strike the experts in this case, I would allow Irwin Seating in all likelihood to use new experts and there would need to be time to do that." *Id.* at 38:4-7. Because the Order was silent as to this, Irwin moved for clarification (Doc. No. 311) seeking specific authorization that it could retain new experts. Both IBM and JDE opposed that motion, in part on the argument that permitting Irwin to retain new experts would impose additional financial burdens on them. IBM Opposition to Motion for Clarification (Doc. No. 317), p. 4; JDE Response to Motion for Clarification (Doc. No. 322), p. 3. The Court (by order of Magistrate Judge Brenneman) denied Irwin's motion for clarification as premature, in part because of the pendency of this appeal. Doc. No. 323.

IBM's assertion that Irwin has offered no "alternatives" is incorrect. Irwin suggested that counsel only be sanctioned, that the reports of Ms DeMario and Mr. Hagins be reviewed to see if one or both of them could not possibly have been tainted by their exposure to the mediation statements, and Irwin has sought permission to retain a new round of experts. Any of these alternatives would "correct the situation." Yet, IBM and JDE, sensing blood in the waters, oppose these suggestions.

## CONCLUSION

For the reasons stated herein and in Irwin's Opening Brief, the Order striking Irwin's experts should be overruled; or alternatively, clarified to permit Irwin to retain substitute experts.

/s/ Joseph Goldberg
Joseph Goldberg
John W. Boyd
Michael L. Goldberg
Freedman Boyd Daniels Hollander Goldberg
& Ives, P.A.
20 First Plaza, Suite 700
Albuquerque, NM 87102
(505) 842-9960

Donald Perelman
Fine, Kaplan and Black, R.P.C.
1835 Market Street, 28th Floor
Philadelphia, PA 19103
(215) 567-6565

Daniel E. Gustafson
Jason S. Kilene
Gustafson Gluek PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
(612) 333-8844

Aaron M. Phelps
Kaplan S. Jones
Varnum Riddering Schmidt & Howlett
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6257

**Counsel for Irwin Seating Company**

# CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2007, a true and correct copy of the foregoing pleadings were served via the Court's ECF System upon the following counsel of record:

Todd C. Jacobs
Grippo & Elden LLC
111 South Wacker Drive
Chicago, IL 60606

Earle I. Erman
Erman, Teicher, Miller, Zucker
 & Freedman, P.C.
400 Galleria Officentre, Suite 444
Southfield, MI 48034

Charles E. Chamberlain, Jr.
Willey, Chamberlain & Yates LLP
940 Trust Building
40 Pearl Street, N.W., Suite 940
Grand Rapids, MI 49503-3032

Stephen J. Rosenfeld
Suzanne M. Scheuing
Natalie A. Harris
Kristin L. Lingren
Mandell Menkes LLC
333 W. Wacker Drive, Suite 300
Chicago, IL 60606


/s/ Joseph Goldberg
Joseph Goldberg